H. E. Jackson, Sp. J.,
delivered the opinion of the court.:
In the fall of 1864, the Federal military authorities seized a steamboat called the “Sylph,” belonging to the plaintiff in error, and arrested the captain and crew in charge of the boat for alleged violations of law and army regulations, in trading with and holding communications with the “Rebels.”
After this seizure and arrest, which occurred on the Mississippi river, below Memphis, the boat, captain and crew were carried to Vicksburg, Miss., then a Federal military post, in command of Gen. Danna, where they were held and detained in close custody and confinement for several weeks! While thus detained under arrest, William Farris, the master or captain of the steamboat “Sylph,” after fully explaining to defendant in error, FT. W. Dean, the ownership of the boat, and the illegal character of their arrest and detention for the purpose of securing the release of himself, the steamboat and its cargo (in which last Farris was personally interested with R. S. Jones, the owner of the boat), made and entered into the following contract and agreement with said Dean, viz.:
“This agreement made and entered into the 21st day of ISTovember, 1864, between Rathaniel W. Dean, of the city of Madison, state of Wisconsin, of the first part, and Will *489 iam Earris, of the city of Memphis, State of Tennessee, of the second part, witnesseth, That the said Dean undertakes to procure the release of the said Earris, with his steamboat “Sylph,” of which he is now captain, from arrest and seizure by the military authorities, under which they are now lying at Vicksburg, Miss., so that he may be permitted to depart hence to Memphis, or elsewhere, with his boat and contents. In the event of such release of the aforesaid military authorities, the said Earris agrees to pay the said Dean, his heirs, legal representatives and assigns for his sendees in the premises, the sum of $4,000.00 in the manner following, to-wit: $2,000.00 in legal currency, the instant said release shall be made, and the further sum of $2,000.00 in like manner so soon as said boat shall ir-rive at Memphis, or the cotton now on board, or a portion of it, shall have been delivered at that port, or at any other port, free from seizure. It is further agreed by the parties hereunto that in the -event the said Earris, party of the second part, shall be allowed without interference from the military authorities to ship on board of his boat, or any boat or transport, the remainder of the cotton bales for which he now holds permits from the treasury department at Memphis, or Helena, Ark., or any other port thereof, he will pay over to the said Dean, his heirs, etc., one-half part of the net proceeds of such, after deducting from the gross sum the cost of purchase, and a relative share of the expense actually incurred in the procuring and getting out the same. Said cotton to be sold in market at same place upon the Mississippi river in possession of the Union forces, at its highest market 'value, and without unnecessary delay. The aforesaid net proceeds to be divided immediately after such sale shall have been made. In case of failure to procure the release of said boat, as contemplated, this contract shall be considered null and void, and not binding upon either party, otherwise it shall be equally binding upon *490 both. parties, and their heirs, legal representatives and assigns.
“In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.
(Signed) NL W. Dean, (Seal)
War. DaeRIS, (Seal)
The treasury permits to carry out cotton referred to in the above contract, were issued to ¥m. Harris individually, and he was using the steamboat “Sylph” in getting out cotton under an arrangement with R>. S. Jones, the owner of the boat, by which Jones was to have a certain share in the profits realized. Dean failed to procure the release of either Harris or the boat, at Vicksburg, but upon the removal of Gen. Dana from that port to Memphis, in December, 1864, he at -the instance of Harris procured the boat, with its captain, cargo, and crew to be sent to Memphis, Tenn., the home port of the boat, where K. S. Jones, the owner, lived, Harris verbally agreeing that for his services in having the boat, etc., sent to Memphis, and there released, Dean should be paid according to the terms and stipulations of the aforesaid contract of November 21, 1864. The effect of this agreement was that Dean might perform his part of the contract at Memphis instead of at Vicksburg. Dean came to Memphis in advance of the boat, and being compelled to go north, placed the matter in the hands of Darker Lewis. Upon the arrival of the boat at Memphis, 'Farris being still detained in custody, employed Leatherman to effect Iris release. But as to who succeeded in procuring the release of Harris and the boat, does not distinctly or satisfactorily appear from the proof. Neither Dean nor his representative’, Lewis, ever called upon Jones, the owner of the boat, to notify him that they were engaged in trying to procure the release of his boat, and when informed by Harris of the contract which he had made with Dean, Jones refused to assent to it. Early in 1865, after the boat and Harris had been released, Dean returned *491 to Memphis, and procured from Farris the following order, in J une, viz.:
Memphis, Feb’y 21st, 1865.
“Mr. R. S. Jones:
The bearer of this, Mr. Dean, who' was 'employed to get the boat “Sylph” and cotton released, is here for his money; yon will please pay him for the same and charge to act. of cotton operations.
(Signed) _ Vm. Farris.”
"When this order was presented, Jones refused to pay, and denied his liability to Dean for any amount whatever. Dean thereupon sued him in the law courts of Memphis, for the $4,000.00 under the contract with Farris, with quantum meruit counts for services rendered in effecting a release of the boat. There was a verdict and judgment for the plaintiff below, from which Jones has appealed in error to this court.
On the trial of the court below the plaintiff introduced and read to the jury, over the objection of the defendant, the above contract, made with Farris on the 21st November, 1864, and was then allowed to prove, both by Farris and himself that said contract was intended to bind Jones as the principal obligor therein, and was not designed to be the personal agreement or undertaking of Farris. The defendant at the time excepted to the introduction o„f this evidence, but his exceptions were overruled by the court. The action of the court in admitting' this evidence was clearly erroneous. It cannot be justified under the rule that undisclosed principals may be held upon contracts made with agents, for, at and before the execution of that contract, Dean had been fully informed of Jones’ ownership of the boat,, and of his interest in the cargo. By the laws of Mississippi, where the instrument was executed, it was sealed contract, such as Farris, in the absence of authority under seal, had no power to enter into, so as to bind Jones. Pickering v. Holt, 6 Greenleaf, p. 160; Boyd v. Dodson, 5 Hum., 37.
*492 The contract does not purport to bind Jones; on the contrary, it clearly shows upon the very face of the instrument that it was the personal contract and individual undertaking and agreement of Farris, binding him alone for the payment of the services to be performed by Dean. The contract stipulated not only for the discharge of the boat and cargo; but for the release of Farris from personal arrest. There is no ambiguity in the terms and stipulations of the instrument. It was entered into by, Dean after a full disclosure of Jones’ connection with the boat and cargo, and having thereby accepted the personal undertaking of Farris for the payment of the consideration he was to receive for his services, he can, upon no legal principle,' be allowed to resort to parol evidence to show that he intended by such contract to bind Jones instead of Farris. Where verbal contracts are made with agents the inquiry as to whom credit is given is a question of fact, but it is “matter of law where it depends upon the true construction of the terms of a written instrument,” as announced by this court in Ahrens v. Cobb, 9 Hum., p. 645.
After improperly admitting the evidence to show that said contract was intended to-bind Jones, the court charged the jury in reference thereto as follows: “If you find from the evidence that when said original contract was entered info it was the intention of the parties that Jones was to be bound thereby, and that plaintiff extended the credit to him, and not to Farris, and that Farris was acting simply as the agent of Jones and not in his own behalf, and such being the understanding and agreement of the parties so far as such contract was necessary for the safety of the boat and cargo, Jones would be liable.” This instruction left to the jury the construction and interpretation of the written contract between Dean and Farris in the light of the parol evidence explanatory thereof, and was cleayly erroneous. The court should have construed said contract for itself, and should have instructed the jury that.by its *493 express terms and legal effect it was binding alone upon Parris. "We are further of the opinion that the court below erred in that portion of the charge which instructed the jury that Jones would be bound to' Dean under what is called the verbal modification of the written agreement-, by which Dean was allowed to perform his part of the contract at Memphis, the home port of the boat, where Jones, the owner, lived, and where he could act for himself.
The court erred in admitting the evidence over the objection of the defendant, the order given by Parris, in February, 1865, directing Jones to pay Dean for releasing the boat. This was incompetent evidence, and calculated to mislead the jury.
Without noticing other objections to the charge of the court, and its refusal to give certain of the forty instructions aslced by the defendant below, it follows that for the above errors the judgment must be reversed, and a new trial awarded.